IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

REBECCA J. THOMPSON,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

Defendant.

No. C13-2005

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.  Thompson's Education and Employment Background . . . . . . . . . . . 5
    B.  Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . . . 5
        1.  Thompson's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.  Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . . 7
    C.  Thompson's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.  ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . 12
    B.  Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . . 14

_____

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

   *1.*  *Opinions of Examining Physicians* . . . . . . . . . . . . . . . . . 14
     *a.*  *Dr. Guevara's Opinions* . . . . . . . . . . . . . . . . . . . 16
     *b.*  *Dr. Rosie's Opinions* . . . . . . . . . . . . . . . . . . . 18
   *2.*  *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 19
   *3.*  *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . 22
  *C.*  *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*VI.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*VII.* *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## I. INTRODUCTION

  This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Rebecca J. Thompson on January 15, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Thompson asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits. In the alternative, Thompson requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

  Thompson applied for SSI benefits on November 13, 2009. In her application, Thompson alleged an inability to work since October 27, 2009 due to back pain, leg pain, and difficulties with walking, standing, climbing stairs, sitting, and lifting objects. Thompson's application was denied on January 25, 2010. On July 3, 2010, her application was denied on reconsideration. On August 30, 2010, Thompson requested an administrative hearing before an Administrative Law Judge ("ALJ"). On December 14, 2011, Thompson appeared via video conference with her attorney before ALJ David G. Buell for an administrative hearing. Thompson and vocational expert Elizabeth M. Albrecht testified at the hearing. In a decision dated January 31, 2012, the ALJ denied Thompson's claims. The ALJ determined that Thompson was not disabled and not entitled

2

to SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Thompson appealed the ALJ's decision. On November 15, 2012, the Appeals Council denied Thompson's request for review. Consequently, the ALJ's January 31, 2012 decision was adopted as the Commissioner's final decision.

On January 15, 2013, Thompson filed this action for judicial review. The Commissioner filed an Answer on March 14, 2013. On May 15, 2013, Thompson filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On July 15, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 15, 2013, Thompson filed a reply brief. On January 28, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"

3

*Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393

4

F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Thompson's Education and Employment Background

Thompson was born in 1959. She completed the eleventh grade in school. Eventually, she earned a GED. Thompson testified that she has "no problems" with reading or writing.

The record contains a detailed earnings report for Thompson. The report covers the time period from 1996 to 2005. From 1996 to 2001, Thompson earned between $6,708.51 (2000) and $16,955.95 (2001). She has no earnings since 2002.

### B. Administrative Hearing Testimony

#### 1. Thompson's Testimony

At the administrative hearing, the ALJ inquired which of Thompson's health problems interfered the most with her ability to work. Thompson responded that "[m]y goodness, one at a time, that's kind of hard, because my back takes my arms, it takes my legs. I'm -- I can't lift, I can't sit long, I can't stand long."[2] Besides physical impairments, Thompson also reported that difficulty with depression interfered with her ability to work.

---

[2] Administrative Record at 34.

Thompson's attorney also questioned Thompson. Thompson's attorney inquired about Thompson's functional abilities:

> Q: . . . What things -- you cay [sic] you cook for yourself. Do you do any of the other cleaning or vacuuming or laundry or any of that kind of stuff?
>
> A: I don't vacuum. I do small loads [of laundry]. . . .
>
> Q: Are you limited in how far you can walk?
>
> A: Yeah.
>
> Q: How far can you walk?
>
> A: Maybe a quarter of a block.
>
> Q: Okay. And when you do that do you need any help doing it? I know you have --
>
> A: My cane. I walk with my cane.

(Administrative Record at 43-44.) Thompson's attorney also asked Thompson about her ability to stand. Thompson testified that she can stand for five to 20 minutes before her legs get tired and her back starts to hurt.

In addition to depression, Thompson also testified that she has difficulty with anxiety. Specifically, she stated that large crowds and public places cause her to have anxiety and panic attacks. Thompson further described the circumstances of her anxiety attacks:

> It depends on how many times I go out, how many people are where they're at, wherever I have to go. I avoid going to the mall. I go grocery shopping as early in the morning as possible with my daughter so I can avoid people. I will not go shopping on a weekend[.]

(Administrative Record at 50-51.)

Lastly, Thompson's attorney asked Thompson if she believed she was capable of working:

> Q: Do you think you're able to work anymore?
>
> A: No.
>
> Q: Tell the Judge why not?

6

A:  Because I'm too limited. I have a handicap. They
    don't want me.
Q:  But do you think you could work? You did pretty
    heavy work all your life.
A:  I can't do what I know. That's all I know.
Q:  Okay.
A:  I tried to learn the computer and I can't learn the
    computer. I don't remember where it goes and what it
    does.

(Administrative Record at 52-53.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth M. Albrecht with a
hypothetical for an individual who:

> has the capacity to perform light work[.] . . . In addition the
> following further limitations, that is, the individual can do only
> occasional stooping, crouching, kneeling and crawling. . . .
> The individual cannot climb at all, no ladders, ropes, scaffolds
> and the individual can engage in handling and fingering only
> frequently. No more often than frequent. And the individual
> cannot do any overhead reaching with the left upper extremity.
> And then in addition I'd like you to consider or assume that the
> individual is limited to only simple routine and repetitive work
> that does not require any close attention to detail and no use of
> independent judgment.

(Administrative Record at 58.) The vocational expert testified that under such limitations,
Thompson could not perform her past relevant work, but could perform the following jobs:
(1) marker (2,500 positions in Iowa and 213,000 positions in the nation), (2) routing clerk
(800 positions in Iowa and 75,000 positions in the nation), and (3) assembler of small
products (4,300 positions in Iowa and 227,000 positions in the nation).

### C. *Thompson's Medical History*

On January 8, 2008, Thompson underwent back surgery for cervical disc herniation
at C5-C6. Dr. Russell Buchanan, M.D., the doctor performing the surgery, noted that

7

Thompson had a history of cervicalgia with corresponding radiculopathy at C6. During the surgery, Dr. Buchanan found "[s]evere disk degeneration with post ligament disk herniation both right and left causing compression of the C6 nerve root bilaterally. This was completely relieved with anterior cervical diskectomy."[3]

On May 7, 2008, Thompson met with Dr. Pradeep Ramesh, M.D., complaining of generalized pain. Specifically, Thompson reported chronic back pain, leg pain, and shoulder pain. Dr. Ramesh noted that earlier in her treatment, he started Thompson on 5 mg of methadone three times per day, and the methadone was "helping her significantly with the pain[.]"[4] Upon examination, Dr. Ramesh diagnosed Thompson with generalized pain and possible fibromyalgia. Dr. Ramesh continued to treat Thompson with medication.

On December 4, 2009, Disability Determination Services ("DDS") referred Thompson to Dr. Christine Guevara, Ph.D., for a mental status examination. In meeting with Thompson, Dr. Guevara opined that Thompson:

> appears to be experiencing symptoms of depression such as: extreme sadness, hopelessness, low self-esteem, worthlessness, loss of pleasure, increased fatigue, low concentration, and interrupted sleep. She denied being suicidal at the time of the evaluation. [She] reported a history of attempting suicide three times by overdosing on her medications and her last period of active suicidal ideation was one year ago. . . .
>
> [Thompson also] appears to be experiencing high levels of anxiety such as: extreme anxiety, fright, worry, tension, and nervousness. She reports beginning to have panic attacks twice a week since she was a teenager. She reports that the attacks are cued by memories of being abused as a child and

---

[3] Administrative Record at 404.

[4] *Id.* at 466.

> anything having to do with perfectionism. . . . [Her]
> perfectionism causes panic attacks with feelings of terror,
> trouble breathing, brain fogginess, rapid heart rate and
> sweating. . . . [Thompson] appears to have Panic Disorder
> With Agoraphobia and Posttraumatic Stress Disorder,
> Chronic.

(Administrative Record at 509.) Dr. Guevara also noted that Thompson had a history of substance abuse, including alcoholism, marijuana use, and methamphetamine use. Thompson reported being clean from methamphetamine use for 29 years, marijuana use for 15 years, and alcohol for 10 years. She underwent drug and alcohol treatment for two years at Celebration Church in Waterloo, Iowa. Upon examination, Dr. Guevara diagnosed Thompson with severe major depressive disorder with psychotic features, chronic post-traumatic stress disorder ("PTSD"), and panic disorder with agoraphobia. Dr. Guevara found Thompson's prognosis to be "fair to poor." Dr. Guevara summarized Thompson's functional abilities as follows, she: (1) has no impairments with regard to the ability to understand instructions, procedures, or locations; (2) has moderate impairments in the ability to carry out instructions, maintain concentration, and pace; (3) has severe impairments in the ability to interact appropriately with the public, including engaging in avoidant behaviors to protect herself from others; and (4) has moderate impairments with the ability to respond appropriately to changes in routine due to depression and high levels of anxiety.

On December 21, 2009, Dr. John Tedesco, Ph.D., reviewed Thompson's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Thompson. On the Psychiatric Review Technique assessment, Dr. Tedesco diagnosed Thompson with major depressive disorder, PTSD, and panic disorder with agoraphobia. Dr. Tedesco determined that Thompson had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration,

9

persistence, or pace. On the mental RFC assessment, Dr. Tedesco determined that Thompson was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Tedesco concluded that "[Thompson] would work best in situations where she did not have to be involved in fast paced highly detailed work activities or work that required her to make frequent changes."[5]

On December 30, 2009, Dr. Donald Shumate, D.O., reviewed Thompson's medical records and provided DDS with a physical RFC assessment for Thompson. Dr. Shumate determined that Thompson could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Shumate further determined that Thompson could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. However, Dr. Shumate opined that Thompson could frequently balance. Dr. Shumate also limited Thompson to occasional overhead reaching with her left upper extremity and frequent handling and fingering with both hands. Additionally, Dr. Shumate determined that Thompson should avoid concentrated exposure to hazards such as machinery and heights. Dr. Shumate found no visual or communicative limitations. Dr. Shumate concluded that:

> [Thompson] has multiple [medically determinable impairments] as noted but has had little treatment specifically for her complaints with exception of analgesics for back pain.

---

[5] Administrative Record at 516.

> The preponderance of evidence indicates [Thompson] is
> capable of function as noted in the RFC.

(Administrative Record at 539.)

On June 25, 2010, Thompson underwent a consultative physical examination performed by Dr. Adam Rosie, M.D. Thompson told Dr. Rosie that she was applying for disability benefits due to back pain. Dr. Rosie noted that Thompson had a long history of back pain that had been gradually getting worse. Thompson reported that:

> she is able to shower and dress herself although she cannot
> fasten the bra behind her. She does limited cooking. Reports
> she is unable to stand for any period of time at the counter.
> She does drive. She says that she does not actively care for
> her grandchildren who live with her, does not do much
> cleaning, does not grocery shop or do laundry, and does not do
> any yard work. She says she is able to lift about a gallon of
> milk as long as she does not have to hold it any length of time.
> She can stand for 10-15 minutes at a time, walk about half a
> block, and sit for short durations of time without moving. She
> is not able to stoop or kneel, she can crawl somewhat but has
> difficulty getting up.

(Administrative Record at 628.) Upon examination, Dr. Rosie diagnosed Thompson with back pain. Dr. Rosie opined that:

> [Thompson] has limitations in repeated lifting and carrying of
> objects heavier than a milk carton. Limitations in standing,
> walking, or sitting for extended periods of time over 15
> minutes. There are limitations in stooping, kneeling, and
> crawling. She has no limitations in speaking, hearing,
> handling objects, traveling, work environment including dust,
> fumes, temperature extremes.

(Administrative Record at 629.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Thompson is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

12

> fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Thompson had not engaged in substantial gainful activity since November 2, 2009. At the second step, the ALJ concluded from the medical evidence that Thompson had the following severe impairments: obesity, degenerative disc disease of the lumbar spine, residuals of spinal fusion in cervical spine, an affective disorder, and an anxiety disorder. At the third step, the ALJ found that Thompson did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Thompson's RFC as follows:

13

> [Thompson] has the residual functional capacity to perform
> 'light' work . . . except she can stoop, kneel, or crawl only
> occasionally. [She] can never climb ladders, ropes, or
> scaffolds. She can handle and finger objects only frequently.
> [She] cannot do any overhead reaching with the left upper
> extremity. Finally, [Thompson] can only perform simple,
> routine, and repetitive work that does not require any close
> attention to detail or the use of independent judgment.

(Administrative Record at 12-13.) Also at the fourth step, the ALJ determined that Thompson could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Thompson could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Thompson was not disabled.

## B. Objections Raised By Claimant

Thompson argues that the ALJ erred in three respects. First, Thompson argues that the ALJ failed to properly evaluate the opinions of two examining physicians, Dr. Guevara and Dr. Rosie. Second, Thompson argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Lastly, Thompson argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Opinions of Examining Physicians

Thompson argues that the ALJ failed to properly evaluate the opinions of consultative examiners, Dr. Guevara and Dr. Rosie. Thompson asserts that the ALJ's reasons for discounting Dr. Guevara's and Dr. Rosie's opinions are not supported by substantial evidence on the record. Thompson further argues that the ALJ erred by failing to take Dr. Guevara's and Dr. Rosie's opinions into consideration when making his RFC determination. Thompson concludes that this matter should be remanded for further

14

consideration of the opinions of Dr. Guevara and Dr. Rosie, and how their opinions relate to her RFC.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

15

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

### a. Dr. Guevara's Opinions

In his decision, the ALJ thoroughly reviewed Dr. Guevara's findings from her consultative examination of Thompson.[6] In considering Dr. Guevara's findings, the ALJ stated:

> While Dr. Guevara was slightly more restrictive than the above residual functional capacity, this report was completed in December 2009. There are no further records to indicate [Thompson] sought any psychological treatment after this examination, and [Thompson] testified that she had not been on medication in approximately three years.

(Administrative Record at 15.) Presumably, the ALJ's statement is meant to discredit Dr. Guevara's opinions. However, this statement fails to consider, let alone address, any of Dr. Guevara's opinions regarding Thompson's functional abilities or limitations.[7] Specifically, the ALJ offers no discussion of Dr. Guevara's determination that Thompson's

---

[6] *See* Administrative Record at 14.

[7] *Compare* Administrative Record at 15 (ALJ's decision) with 509-512 (Dr. Guevara's Psychological Evaluation).

16

limitations stemming from anxiety and depression, include: (1) moderate impairments in the ability to carry out instructions, maintain concentration, and pace; (2) severe impairments in the ability to interact appropriately with the public, including engaging in avoidant behaviors to protect herself from others; and (3) moderate impairments with the ability to respond appropriately to changes in routine.[8] Furthermore, the ALJ fails to address Dr. Guevara's opinion that at the time of the evaluation it would have taken Thompson at least 12 months to become stable from a mental health standpoint.[9] Moreover, Dr. Guevara noted that it was difficult for Thompson to regularly see her doctors or obtain all her necessary medication due to having no insurance.[10] It should also be noted that at the administrative hearing, Thompson testified that she had not taken her mental health medication in recent years because it made her suicidal.[11]

Having reviewed the entire record and considered the opinions presented in Dr. Guevara's evaluation, the Court believes that the ALJ's failure to fully address Dr. Guevara's opinions draws into question the ALJ's RFC assessment and whether the ALJ's RFC is supported by substantial evidence. *See Guilliams*, 393 F.3d at 803. Significantly, the ALJ offered no reasons for accepting or rejecting Dr. Guevara's opinions. Instead, the ALJ noted that Thompson had stopped seeking mental health treatment after being evaluated by Dr. Guevara. While Thompson's failure to continue

---

[8] Administrative Record at 511.

[9] *Id.*

[10] *Id.* at 509. Other medical records contain similar reports about Thompson's difficulty seeing doctors regularly and obtaining necessary medication. For example, in October 2010, it was noted on one of Thompson's medical records that "[s]he has been off many of her medications, because she is unable to pay for it." Administrative Record at 697.

[11] *See* Administrative Record at 41.

17

mental health treatment is an important factor in determining whether she should be eligible for disability benefits, the ALJ offers no explanation as to the relevance of this factor in determining the weight that should be afforded Dr. Guevara's opinions. The Court concludes that the ALJ failed in his duty to fully address, let alone resolve, any conflicts between Dr. Guevara's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Court also finds that the ALJ failed to fully and fairly develop the record with regard to Dr. Guevara's opinions. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, the Court finds that this matter should be remanded for further consideration of Dr. Guevara's opinions, including consideration of how Dr. Guevara's opinions relate to Thompson's RFC determination.

### b.    Dr. Rosie's Opinions

Turning to Dr. Rosie's opinions, the ALJ addressed his opinions as follows:

> The undersigned gives considerable weight to the opinion of Dr. Rosie, based on his objective testing, but notes that little weight is given to his notation of fifteen-minute limitations on standing, walking, and sitting, as it is not consistent with his other testing and findings, or supported by longitudinal medical record of evidence.

(Administrative Record at 15.)

Here, the ALJ reviewed Dr. Rosie's opinions and gave his opinions "considerable" weight based on Dr. Rosie's objective testing.[12] However, the ALJ also concluded that Dr. Rosie's opinion that Thompson is limited in standing, walking, and sitting to fifteen minute intervals is entitled to "little" weight. The ALJ's reasoning for granting "little"

---

[12] *See* Administrative Record at 15.

weight to this opinion is that such limitations are "not consistent with his other testing and findings, or supported by longitudinal medical record of evidence."[13] Because the ALJ fails to specify any testing or records in the evidence which are inconsistent with Dr. Rosie's findings as to Thompson's abilities with regard to standing, walking, and sitting, the Court believes that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Rosie's opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Moreover, under the circumstances, the ALJ's failure to fully address or explain with any specificity this pertinent issue, leads the Court to conclude that the ALJ failed to adequately resolve any conflicts that might exist between Dr. Rosie's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Accordingly, the Court finds that this matter should be remanded for further consideration of Dr. Rosie's opinions, including consideration of how Dr. Rosie's opinions relate to Thompson's RFC determination.

## 2. *Credibility Determination*

Thompson argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Thompson maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Thompson's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians

---

[13] *Id.*

19

relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ

20

when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[14]   The ALJ also thoroughly addressed each *Polaski* factor and explained his reasoning for finding Thompson's subjective allegations of disability less than credible.[15]   Under such circumstances, the Court would normally affirm the ALJ's credibility determination.   The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because the ALJ's decision relies heavily on the ALJ's perceived lack of limitations from both psychological impairments and physical impairments for Thompson.   As discussed in section *V.B.1.* of this decision, the ALJ failed to fully and fairly develop the record and properly consider the opinions of two examining physicians, Dr. Guevara and Dr. Rosie.   Both of these physicians opined that Thompson had serious limitations due to psychological and physical impairments.[16]   Accordingly, the Court believes that in remanding this matter for further consideration of the opinions of Dr. Guevara and Dr. Rosie, the ALJ should also further consider Thompson's allegations of pain and disability in light of his reconsideration of

_____

[14] *See* Administrative Record at 16.

[15] *Id.* at 16-17.

[16] *See* Administrative Record at 509-512 (Dr. Guevara's evaluation); 627-630 (Dr. Rosie's evaluation).

Dr. Guevara's and Dr. Rosie's opinions. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Thompson's credibility determination.

### 3.    *Hypothetical Question*

Thompson argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Thompson also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Thompson maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

22

In section *V.B.1.* of this decision, the Court remanded this matter for further consideration of the opinions of Dr. Guevara and Dr. Rosie, particularly with regard to Thompson's mental and physical impairments. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Thompson's limitations based on the medical evidence as a whole, including the opinions of Dr. Guevara and Dr. Rosie. *See Hunt*, 250 F.3d at 625 (Requiring the ALJ to "capture the concrete consequences of the claimant's deficiencies.").

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record

23

and properly consider the opinions of Dr. Guevara and Dr. Rosie; (2) fully and fairly develop the record with regard to Thompson's credibility; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Thompson's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## VI.  CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall fully and fairly develop the record and provide clear and specific reasons for accepting or rejecting Dr. Guevara's opinions and Dr. Rosie's opinions. The ALJ must support his reasons with evidence from the record, particularly with regard to Thompson's mental and physical impairments. The ALJ must also consider all of the evidence relating to Thompson's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations, particularly in light of his consideration of Dr. Guevara's and Dr. Rosie's opinions. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Thompson's limitations based on the medical evidence as a whole.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 22nd day of October, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA